**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Hugo Leonel Ardon Osorio, <br><br> Petitioner, <br><br> -v- <br><br> LaDeon Francis, *New York Field Office Director for U.S. Immigration and Customs Enforcement*; Raul Maldonado, Jr., *Warden of Metropolitan Detention Center*; Kristi Noem, *Secretary of Homeland Security*; Pamela Bondi, *Attorney General*; Todd M. Lyons, *Acting Director, U.S. Immigration and Customs Enforcement*, <br><br> Respondents. | 2:26-cv-1074 <br> (NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On February 25, 2026, Hugo Leonel Ardon Osorio filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus ("Petition"), ECF No. 1.) The Petition argues that ICE's detention of Mr. Osorio without notice and opportunity to be heard since February 4, 2026 violates the Due Process Clause of the Fifth and Fourth Amendments to the U.S. Constitution, 8 U.S.C. § 1226(a) ("Section 1226(a)") of the Immigration and Nationality Act, and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The Petition seeks the following relief: (1) a writ of habeas corpus requiring Respondents to immediately release Mr. Osorio from custody without any additional constraints on his liberty, and enjoining his re-detention for at least seven days after release; (2) an individualized bond hearing for Mr. Osorio within fourteen days as an alternative to an order requiring immediate release; (3) an award of reasonable attorneys' fees and costs pursuant to the Equal Access to

Justice Act, 28 U.S.C. § 2412; and (4) any additional relief this Court deems just and proper. (Petition at 21–22.)[1] For the reasons explained below, the Petition is GRANTED in part.

Respondents are federal government officials named in their official capacities: (1) Ladeon Francis, in his official capacity as Field Office Director for ICE's New York Field office; (2) Raul Maldonado Jr., in his official capacity as Warden of the Metropolitan Detention Center; (3) Pamela Bondi, in her official capacity as Attorney General of the United States; (4) Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; and (5) Todd Lyons, in his official capacity as Acting Director of ICE.

Respondents "have no objection to the Court deciding the petition on the submissions in lieu of a hearing" and have provided all records on which they rely to oppose the Petition. (Response to Order to Show Cause ("Response") at 3, ECF No. 6; *see id*. at 5–8.)[2] They rely on and incorporate by reference the arguments they made to this Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). Respondents argue that ICE's detention of Mr. Osorio falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain

---

[1] The Petition also seeks an order prohibiting Mr. Osorio's removal from the United States and transfer from outside of this Court's jurisdiction pending adjudication of the instant petition, and for the Court to assume jurisdiction over this matter. (Petition at 21.) The Court has effectively granted such relief through the issuance of a February 25, 2026 Order to Show Cause, which assumed jurisdiction over this matter and prohibited Respondents from removing Mr. Osorio from the United States or transferring him outside of the Eastern District of New York, Southern District of New York, and District of New Jersey absent further order of the Court. (*See* ECF No. 4.)

[2] The Response is a single PDF that includes Respondents' letter response to the Petition (Response at 1–4), the Form I-200 Warrant for Arrest that ICE used to arrest and detain Mr. Osorio (("Form I-200") *id.* at 5) and the Form I-862 Notice to Appear ICE served him with after his arrest (("Form I-862") *id*. at 6–8).

noncitizens who are "seeking admission" to the United States. (Response at 1.) According to Respondents, Section 1225(b)(2) requires Mr. Osorio's detention, and he has no right to any additional process under the Due Process Clause. Respondents' position is that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

Respondents are incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026), and that decision is incorporated by reference in its entirety in this Order.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id*. at *22. Here, Mr. Osorio is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him, Mr. Osorio had been living in the interior of the United States since around 2005 and has four U.S. citizen children. (Petition at 5–6.)

Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (Response at 2.) Nor do they submit any factual information aside from a Notice to Appear and a Warrant of Arrest. (*See generally* Response.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new

3

position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases raising this issue are on appeal.[3] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[4] The Fifth Circuit recently reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set

---

[3] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

[4] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

4

forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.[5]

Moreover, nothing in the record shows that ICE arrested and detained Mr. Osorio under Section 1225(b)(2) rather than Section 1226(a). (*See* Form I-200 (stating that Mr. Osorio was arrested pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2)).) Respondents first invoked Section 1225(b)(2) as the basis for Mr. Osorio's detention in the course of this litigation. (Response at 1.) The Supreme Court has recognized that a "post-hoc rationalization" first articulated in litigation carries little weight. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). As courts in the Southern District of New York have recognized, "the Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see also Yao v. Almodovar*, No.

---

[5] Respondents rely on *Saamishvili v. Flanagan*, et al., No. 25-cv-6178, 2026 WL 377574, at *3 (E.D.N.Y. Feb. 11, 2026), to support their expansive interpretation of Section 1225(b)(2) in this case. (Response at 2). This Court respectfully disagrees with *Saamshvili* about the scope of Section 1225(b)(2). Additionally, the petitioner in that case was subject to an order of removal, and it is unclear whether the removal order was final such that a different INA provision—8 U.S.C §1231(a)(2)(A)—governed the petitioner's detention pending removal.

25-cv-9982, 2025 WL 3653433, at \*4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at \*5 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Accordingly, ICE's detention of Mr. Osorio is governed by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Osorio has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. *See* Response at 2; *see also Rodriguez-Acurio*, 2025 WL 3314420, at \*25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).[6] ICE's detention of Mr. Osorio without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and

---

[6] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Osorio since February 4, 2026, violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Osorio without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Osorio because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on February 4, 2026. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Osorio without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record showing that Mr. Osorio presents a flight risk or danger to the community.[7] Mr. Osorio has no criminal record whatsoever. (Petition at 6.)

Not only does Mr. Osorio pose no safety or flight risk, but nothing in the record suggests that a DHS officer made *any* individualized determination that Mr. Osorio presented a danger or flight risk prior to ICE's arrest and detention of him on February 4, 2026. According to the

---

[7] Respondents elected not to submit any evidence concerning either flight risk or danger to the community by not even filing a declaration from a government official with personal knowledge about why Mr. Osorio was stopped and arrested on February 4, 2026 or the basis for his detention.

verified Petition, "On February 4, 2026, [Mr. Osorio] was arrested when he was in his car, on his way to work, waiting to board the Greenport ferry to Shelter Island NY, when an agent knocked on his window and asked for identification then proceeded to arrest him." (Petition at 5.) After arresting Mr. Osorio and while driving him to the ICE processing center in Central Islip, "the agent showed a picture of someone else and told him they were looking for this other person," and the ICE officer said to Mr. Osorio that they had not been looking for him. (*Id.*) Moreover, ICE did not serve Mr. Osorio with a warrant until *after* he had arrived at the Central Islip ICE processing center, as shown by the face of the warrant, which indicates that it was served on Mr. Osorio in Central Islip—not in Greenport, where ICE arrested him. (*See* Form I-200.) At no point did anyone at DHS or ICE determine that Mr. Osorio presented a flight or safety risk. Thus, Respondents lack any basis whatsoever for concluding that Mr. Osorio presents a flight or safety risk, and their detention of him was unlawful at its inception.

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Osorio's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings— Respondents' detention of Mr. Osorio with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Osorio was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its

expansive interpretation of Section 1225(b)(2).[8] *See Lopez Benitez*, 795 F. Supp. 3d at 486; *Rueda Torres*, 2025 WL 3168759, at *5.

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Osorio from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Osorio is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant

---

[8] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Osorio, that provision is plainly inapplicable to him. Mr. Osorio is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id*. at *15. Accordingly, ICE's detention of Mr. Osorio since February 4, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Osorio is not rendered meaningless.

Additionally, Mr. Osorio "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). Prior to his unlawful detention, Mr. Osorio was not subject to any electronic monitoring requirements by ICE. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and "restor[ing] . . . the status quo ante," *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Osorio without any condition for electronic monitoring, including but not limited to GPS monitoring.

## CONCLUSION

Accordingly, for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is granted in part. Respondents must coordinate with Mr. Osorio's counsel and thereafter release Mr. Osorio, without electronic monitoring, into the physical care of his counsel or another mutually agreed upon person at the earliest possible time agreed upon by the parties, but no later than **February 26, 2026 at 6:00 p.m.** Respondents must release Mr. Osorio with all of his belongings that are in Respondents' possession, including but not limited to all identification cards, clothing, and money. Respondents shall confirm compliance with these directives, including by identifying the individual to whom Mr. Osorio was released, in a filing on the docket by **February 26, 2026 at 11:59 p.m.**

Additionally, pending the issuance of any final removal order against Mr. Osorio, Respondents are enjoined from denying Mr. Osorio bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

At this time, the Court reserves ruling on the request for attorneys' fees and costs under the Equal Access to Justice Act set forth in the Petition. Mr. Osorio may file an application for attorneys' fees and costs incurred in pursuing this action by May 27, 2026.

The Court concludes that the other arguments set forth in the Petition for granting Mr. Osorio the requested relief, including arguments that the detention violates 8 U.S.C. § 1226(a), the Fourth Amendment, and the Administrative Procedure Act, are now moot and unnecessary to resolve.

The Show Cause hearing scheduled for Monday, March 2, 2026, at 1:00 p.m. in the Alfonse D'Amato U.S. Courthouse is therefore adjourned. The matter is held in abeyance.

Dated: Central Islip, New York
       February 26, 2026

                                         */s/ Nusrat J. Choudhury*
                                         NUSRAT J. CHOUDHURY
                                         United States District Judge